UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SAMUEL A. MAZZOLA,

      Plaintiff,

v.                                      Case No. 3:12-cv-1055-J-34JRK

DONALD DAVIS, et al.,

      Defendants.
_____

## ORDER

### I. Status

Plaintiff Samuel A. Mazzola, an inmate of the Florida penal system, initiated this action on September 26, 2012, by filing a pro se Civil Rights Complaint (Doc. 1). Mazzola filed an Amended Complaint (Doc. 7) on November 6, 2012; a Second Amended Complaint (Doc. 10) on April 30, 2013; and a Third Amended Complaint (TAC; Doc. 13) with exhibits (P. Ex.) on June 20, 2014. Mazzola names the following individuals as Defendants: (1) Walter McNeil, former Secretary of the Florida Department of Corrections (FDOC); (2) Donald Davis, Warden of Columbia Correctional Institution (CCI); (3) Michael Willis, Assistant Warden of Programs at CCI; (4) Crawford, a canteen manager at CCI; (5) D. Anderson, a canteen manager at CCI; and (6) the Chief Executive Officer of the Keefe Corporation. In the TAC, Mazzola, a paraplegic confined to a wheelchair, asserts that Defendants are discriminating against him and other wheelchair-bound inmates by failing to hire them as canteen operators in violation of the Americans with Disabilities Act (ADA). TAC at 5. As relief, he requests nominal, compensatory, and punitive damages.

He also seeks modification of one canteen within the FDOC, so that, if or when a qualified wheelchair-bound inmate is selected to work in the canteen, he may enjoy the same benefits as non-handicapped inmates.

On June 17, 2015, the Court dismissed Defendants McNeil and the Chief Executive Officer of the Keefe Corporation (Doc. 15) without prejudice because Mazzola failed to state a claim for relief against them. Then, after Mazzola's voluntary requests for dismissal, the Court dismissed Defendant D. Anderson (Doc. 39) on August 1, 2016, and Defendant Crawford (Doc. 45) on August 24, 2016. Therefore, the only remaining defendants in this case are Davis and Willis.

Before the Court is the Motion for Summary Judgment filed by Defendants Davis and Willis (Motion; Doc. 57) with exhibits (Def. Ex.). The Court advised Mazzola of the provisions of Rule 56, Federal Rules of Civil Procedure, notified him that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond to the Motion. See Summary Judgment Notice (Doc. 58); Order of Special Appointment; Directing Service of Process Upon Defendants; Notice to Plaintiff (Doc. 14). Mazzola filed his response to the Motion. See Plaintiff's Opposed to Defendants' Motion for Summary Judgment (Response; Doc. 65) with exhibits (Resp. Ex.).

## II. Statement of Facts[1]

On September 29, 2009, Mazzola submitted an ADA Form DC2-530 to notify the FDOC that there "is no wheelchair accessible canteen's, [sic] so that we (I) may be a canteen operator(s) and have the same opportunity as other's [sic] without a wheelchair." P. Ex. 1A, State of Florida, Department of Corrections, Reasonable Modification or Accommodation Request. He recommended that the FDOC lower the shelves and widen the aisles in one canteen to accommodate handicapped inmates. Id. In response to the submission, Defendant Willis interviewed Mazzola on October 12, 2009, and concluded that: "If [an] inmate that is wheelchair bound was selected to work in the canteen, appropriate accommodations would be made as necessary if the physical structure of the building allows." P. Ex. 1B, Reviewer's Action.

On November 2, 2009, Mazzola submitted a formal grievance to Defendant Davis and requested that the FDOC modify a canteen and select him as a canteen operator. P. Ex. 4A, Request for Administrative Remedy or Appeal; Resp. Ex. G. The FDOC (T. Birchard and Defendant Davis) responded, stating in part:

> Your request for administrative remedy has been received, reviewed and evaluated. The response that you received on the informal grievance has been reviewed and is found to appropriately address the concerns that you raised. As stated by Mr. Willis, you currently are not a Canteen Operator, so this issue does not affect you. Furthermore, a review of your request for Reasonable Modification or Accommodation

---

[1] The facts recited in this section are either undisputed, or any disagreement has been indicated. Because this case is before the Court on Defendants' Motion, the facts recited herein, and all reasonable inferences therefrom, have been viewed by the Court in a light most favorable to Plaintiff Mazzola. See T-Mobile S. LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008). Additionally, because Mazzola's TAC is verified under oath, his assertions are given the same weight as if made in an affidavit. See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014) (citations omitted) ("The factual assertions that [Plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [Plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

> Request indicated that if an inmate that is wheelchair bound was selected to work in the canteen, appropriate accommodations would be made as necessary if the physical structure of the building allows.

P. Ex. 4B, Response, dated November 19, 2009; Resp. Ex. G-1.

On July 28, 2010, Mazzola submitted another ADA Form DC2-530 in which he stated that he submitted his name to "the canteen supervisor and classification" to be a canteen operator on September 7, 2009, and because he was never selected as a canteen operator, he believed CCI was discriminating against him. P. Ex. 5A-5B, Resp. Ex. B-B1. He asserted that six other inmates had been selected to be canteen operators since he submitted his name, yet none of those inmates were on a "canteen list." P. Ex. 5B, Resp. Ex. B1. Mazzola requested that one canteen be modified and one wheelchair-bound inmate be placed in the canteen. P. Ex. 5A, Resp. Ex. B. Defendant Willis responded: "The ICT [(Institutional Classification Team)] will make job assignments. The ICT is not bound to give any particular inmate a canteen job assignment." P. Ex. 5C, Reviewer's Action, dated August 5, 2010.

On August 22, 2010, Mazzola submitted an informal grievance to Defendant Davis to inquire about the selection process for the position of canteen operator. P. Ex. 6A-6B, Inmate Request. Mazzola stated that he requested to be a canteen operator and was told he would be placed on the "list" to be a canteen operator. Id. He complained, however, that since he made his request in August 2009, six other inmates were selected to be a canteen operator even though those inmates were never on the "list." Id. Mazzola asserted that the staff discriminated against him because he was a wheelchair-bound inmate. Upon referral of the grievance to the Classification Department, Mrs. Collins responded as follows:

4

> Received, reviewed, and evaluated. (1) received all [seven] documents [and] a[g]rieved issue. The selection process is up to the work supervisor and then reviewed by the ICT for approval or denial. Based on my review of you for the job assignment[,] you would not ever be approved regardless of physical abilities. (2) Second, you have not provided sufficient proof an inmate confined to a wheelchair could not work in a specific area. You simply allege [sic]. Should the need be found to modify a specific area we also state [we] will accommodate.

P. Ex. 6A, Response, dated August 30, 2010.

On September 2, 2010, Mazzola submitted a formal grievance to Defendant Davis seeking to clarify Mrs. Collins's August 30th response. P. Ex. 7A-7B, Request for Administrative Remedy or Appeal. As a remedy, he sought the modification of one canteen and placement as the next canteen operator. Id. at 7B. The FDOC (T. Birchard and Defendant Willis) responded in part:

> Your request for administrative remedy has been received, reviewed and evaluated. The response that you received on the informal grievance has been reviewed and is found to appropriately address the concerns that you raised. As stated by Mr. Willis, you currently are not a Canteen Operator, so this issue does not affect you. Furthermore, a review of your request for Reasonable Modification or Accommodation Request indicated that if an inmate that is wheelchair bound was selected to work in the canteen, appropriate accommodations would be made as necessary if the physical structure of the building allows. One of the primary objectives of staff of the Department of Corrections is the placement of inmates in appropriate job assignments, custody levels and institutional assignments in order to minimize the risk to the general public and maintain order and security. Even if an inmate fits the minimum basic criteria for a particular program, that is not a guarantee that s/he will be recommended or approved for that program. In addition, placement in such programs is a privilege not a right of the inmate and the ultimate decision as to whether or not the inmate is assigned to a specific program or facility is based on a professional review made by staff in accordance with the rules of the Department.

5

P. Ex. 7C, Response, dated September 13, 2010.

In 2011 and 2012, Mazzola continued to inquire about being considered for a job as an inmate canteen operator. P. Exs. 10, 11, 12, 13. In November 2011, a prison official submitted Mazzola's name to the Classification Department for consideration. See P. Ex. 11, Resp. Ex. I. In response to a July 2012 inquiry from Mazzola regarding the qualifications needed for the position of canteen operator, Defendant Anderson, a canteen manager and representative of Keefe Group, advised Mazzola as follows:

> I do not know what classification looks at other than the social security issue[.] [Y]ou must have a verified social security number and card, and your disciplinary record[.] Keefe requires fairly good TABE [(Test of Adult Basic Education)] scores and you can not have any type of sex crimes.

P. Ex. 13, Response, dated July 27, 2012.

### III. Standard of Review

Under Rule 56, Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[2] An issue is genuine when the

---

[2] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

evidence is such that a reasonable jury could return a verdict in favor of the non-movant. See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable

---

Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Id. Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

"Although an unpublished opinion is not binding . . ., it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### IV. Summary of Arguments

In their Motion, Defendants Davis and Willis argue that Mazzola fails to state a claim against them in their individual capacities because Title II of the ADA does not provide for individual capacity suits against state officials. Motion at 9-10. Further, they state that even assuming individual capacity suits are authorized, Mazzola fails to state an ADA claim. Specifically, Defendants Davis and Willis assert that Mazzola (1) does not cite to any evidence that he was discriminated against because of his disability; (2) cannot connect them to any decision regarding whether to hire him; and (3) did not qualify for the position of canteen operator. Id. at 10-12. To the extent Mazzola sues Defendant Davis and Willis in their official capacities, they contend that Mazzola's monetary damages claims are barred by the state's sovereign immunity. Id. at 12-13. Further, they assert that Mazzola is not entitled to either monetary damages or injunctive relief because Mazzola does not demonstrate that any discrimination occurred or that the alleged discrimination was intentional. Id. at 13-15.

In his Response, Mazzola argues that he is suing Defendants Davis and Willis in their individual capacities. Response at 2. Mazzola also contends that he was discriminated against because of his disability as evidenced by the failure of Defendants Davis and Willis to hire him or other disabled inmates as canteen operators. In support of his claim, Mazzola submits eight affidavits from other wheelchair-bound inmates. See Resp. Ex. C-C7. Inmate Thomas Fondura states that he has never been asked to be a

8

canteen operator, and knows the FDOC would never hire him as a canteen operator because the FDOC does not have wheelchair accessible canteens. Id. at C. Inmate William Towning declares that he never asked to be a canteen operator because he believes he would not be hired given the fact that the FDOC has never hired a wheelchair-bound inmate for the canteen operator position and there are no wheelchair accessible canteens. Id. at C1. Inmates Randolph Phillips, Wesley Caruthers, and Wayne Brasby state that they have requested to be a canteen operator, but have not been selected to be a canteen operator. Id. at C2-C4. Inmates Leslie Hill and Kent Murray assert that they made requests to be canteen operators, but were told by unidentified persons that they could not be canteen operators because the canteens were not designed to accommodate a wheelchair-bound inmate. Id. at C6-C7. Inmate Clark Ronald asserts that he has been to six FDOC's institutions and has "never seen nor heard" of a wheelchair-bound inmate "working in any canteen run by Keefe." Id. at C5.

**V. Laws and Conclusions**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Only public entities are liable for violations of Title II of the ADA." Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010).

**A. Individual Capacity Claims**

Mazzola expressly states that he seeks to sue Defendants Davis and Willis in their individual capacities. See Response at 2. Because only public entities may be liable under the ADA, Mazzola fails to state an ADA claim against Defendants Davis and Willis in their

individual capacities. See Owens v. Sec'y, Fla. Dep't of Corr., 602 F. App'x 475, 477, 478 (11th Cir. 2015); Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996) ("[T]he Disabilities Act does not provide for individual liability, only for employer liability"). Therefore, the Court will grant the Motion and dismiss the TAC to the extent Defendants Davis and Willis are sued in their individual capacities.

### B. Official Capacity Claims

Mazzola does not assert in his Response or TAC that he seeks to sue Defendants Davis and Willis in their official capacities. Nevertheless, any ADA claim against Defendants Davis and Willis in their official capacities would be a claim against the FDOC. See Hafer v. Melo, 502 U.S. 21, 25 (1991) (noting that suits against state officials in their official capacities should be treated as suits against the State); Owens, 602 F. App'x at 478. "State prisons [, like the FDOC,] are public entities for purposes of the ADA[,]" and are therefore subject to suit under the ADA. Owens, 602 F. App'x at 477 (citing Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998)). In the TAC, Mazzola seeks injunctive relief that can only be imposed against the FDOC. Therefore, liberally construing the TAC, the Court considers Mazzola's ADA claim as a claim against the FDOC through Defendants Davis and Willis in their official capacities.

To state a claim of under Title II of the ADA, a plaintiff must demonstrate

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1083 (11th Cir. 2007). With regard to the first element, a "qualified individual with a disability" is "someone who has a disability and

'meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity,' with or without reasonable modifications." Owens, 602 F. App'x at 478 (quoting 42 U.S.C. § 12131(2)).

Defendants do not dispute that Mazzola has a disability. However, the parties do dispute whether Mazzola meets the essential eligibility requirements of being a canteen operator. Defendants Davis and Willis argue that Mazzola is unable to perform the essential functions of a canteen operator; namely loading items, lifting items, stocking items, and pushing or pulling a cart. Motion at 11-12. However, during his deposition, Mazzola stated that he was able to lift boxes, bend down, touch the ground with his hand, and pick up items off the floor. Def. Ex. A at 14. Further, Mazzola asserted that he requested that one of the canteens' shelves be lowered to allow him access, presumably to allow him to stock items. Id. at 6. While there is no dispute that Mazzola cannot push or pull a cart, Mazzola indicated that the canteen operators assisted each other in transporting items via the carts to the canteens. See id. at 7. Viewing this evidence in the light most favorable to Mazzola, a jury could conclude that Mazzola (1) can load and lift items; (2) with a reasonable modification to the shelves, stock items; and (3) with the assistance from other canteen operators, pull or push a cart. Therefore, the Court concludes that there is a genuine and disputed issue of material fact regarding whether Mazzola is a qualified individual with a disability. However, the inquiry does not end here.

The Court also must determine whether there is a disputed issue of material fact regarding whether the FDOC failed to select Mazzola as a canteen operator because he was disabled. Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1334 (11th Cir. 1999) (holding that to succeed an ADA plaintiff must prove that the challenged action was

"because of" the disability). Defendant Davis explains the process of selecting canteen operators in his affidavit. First, "[t]he Classification Department generates a list of candidates with the appropriate skills and or aptitude to perform the daily duties of a canteen operator." Def. Ex. B. Next, the Institutional Classification Team (ICT) reviews the list of candidates and makes the decision to assign a candidate as a canteen operator. Def. Exs. A at 19, B, C. The ICT consists of "the warden or assistant warden, classification supervisor, chief of security, and other members as necessary when appointed by the warden or designated by rule."[3] Def. Exs. B, C.

The evidence reflects that Mazzola requested that his name be submitted to the Classification Department for consideration as a canteen operator. See P. Ex. 11, Resp. Ex. I. He points to no evidence that the Classification Department ever found him to have the "appropriate skills and aptitude" to be placed on the list for consideration by the ICT, or that he had an acceptable TABE score. Nor does he suggest how he would have any knowledge of what inmates' names were actually forwarded to the ICT. His conclusory allegation that his name was placed on the "list," see Declaration of Samuel Mazzola (Doc. 65-1), does not create a genuine issue of material fact. See, e.g., Daniel v. Dekalb Cty. School Dist., 600 F. App'x 632, 635 (11th Cir. 2014) ("Conclusory allegations or allegations that are unsupported by the record do not create genuine issues of material fact that withstand summary judgment."). This is particularly true given the fact that Defendant Willis states that "[f]rom [his] recollection, Mr. Mazzola did not ever make it to the ICT stage with respect to a position with the canteen." Def. Ex. C. And, Defendant

---

[3] Defendant Davis was the Warden of CCI from "approximately spring of 2010 until [his] retirement in January 0f 2013" and a member of the ICT. Def. Ex. B. Defendant Willis was the Assistant Warden of CCI "from approximately June of 2003 until March of 2012" and was a member of the ICT team. Def. Ex. C.

Davis states that he does not "recall Mr. Mazzola and [he does not] believe [he] was ever involved in a canteen employment decision regarding Mr. Mazzola." Def. Ex. B. Moreover, the grievance response from the Classification Department itself states that based on her review, Mazzola would not be approved for a canteen operator position regardless of his physical abilities. See P. Ex. 6A.

Assuming arguendo that the Classification Department placed Mazzola's name on the list of candidates for review by the ICT, Mazzola points to no evidence suggesting that the ICT failed to select him as a canteen operator because of his disability. As explained in response to Mazzola's September 2, 2010 grievance,

> One of the primary objectives of staff of the Department of Corrections is the placement of inmates in appropriate job assignments, custody levels and institutional assignments in order to minimize the risk to the general public and maintain order and security. Even if an inmate fits the minimum basic criteria for a particular program, that is not a guarantee that s/he will be recommended or approved for that program. In addition, placement in such programs is a privilege not a right of the inmate and the ultimate decision as to whether or not the inmate is assigned to a specific program or facility is based on a professional review made by staff in accordance with the rules of the Department.

P. Ex. 7C. Mazzola presents no evidence of the discussions the ICT had regarding the selection of canteen operators, whether or not they involved him, or the actual decisions made in selecting canteen operators. Indeed, Mazzola acknowledges that he was neither aware of nor had any personal knowledge of the ICT's communications regarding the selection for canteen operators. Def. A. at 19-20. Further, the affidavits from the other wheelchair-bound inmates submitted by Mazzola do not aide Mazzola's contention that the FDOC discriminated against him because of his disability. First, the inmates lack any personal knowledge about any consideration of Mazzola as a canteen operator. Second,

the inmates do not provide any details regarding their own qualification or efforts to be considered to be a canteen operator to allow the Court to even infer discrimination. Indeed, two inmates admit that they never sought a position as a canteen operator, and as for the remaining inmates, the Court can only guess whether they were qualified individuals with a disability.[4] The Court is left with only Mazzola's speculation that he was not selected as a canteen operator because of his disability. Mazzola's speculation is insufficient to avoid summary judgment. See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) ("unsupported speculation … does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment."(emphasis and internal quotes omitted)).

The ADA requires a plaintiff to prove that he was discriminated against "because of" a disability. Farley, 197 F.3d at 1334. Thus, Mazzola must point to some evidence that his disability was "a determinative" factor in the decision. Id. Because he has failed to point to any evidence that either the Classification Department or the ICT even considered his disability, he fails to create a genuine issue of fact for trial. Moreover, both Davis and Willis affirmatively state they have not denied a qualified inmate any opportunity because of a disability. Def. Exs. B, C. Mazzola fails to rebut any of this evidence. In this record,

---

[4] Although inmates Hill and Murray state that they were told they could not be canteen operators because the canteens were not accessible, they do not identify who made this statement or in what context. This unattributed hearsay is at best a scintilla of evidence sufficient to withstand summary judgment. See Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) ("A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."); Evans v. McClain of Ga., Inc., 131 F.3d 957, 962 (11th Cir. 1997) (speculation and hearsay are insufficient to create an issue of fact for trial).

Mazzola has failed to point to evidence creating a genuine issue of material fact on his claim that the FDOC, through Defendants Davis and Willis, discriminated against him because of a disability when it failed to select him to be a canteen operator. Therefore, the Court will grant the Motion and dismiss the TAC to the extent Defendants Davis and Willis are sued in their official capacities. Based on the foregoing, it is now

**ORDERED AND ADJUDGED:**

1. The Motion for Summary Judgment filed by Defendants Davis and Willis (Doc. 57) is **GRANTED**.
2. The Clerk is directed to enter judgment in favor of Defendants Donald Davis and Michael Willis.
3. The Clerk is further directed to terminate any pending motions and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of September, 2017.

MARCIA MORALES HOWARD
United States District Judge

sflc

c: Samuel A. Mazzola, #043378
Counsel of Record